I will now call the case of Alan Berkun v. Commissioner of Internal Revenue Good morning. Good morning. May it please the court and a pleasure to appear before all of you once again. My name is Joseph DeRuzo and I represent the appellant taxpayer, Mr. Alan Berkun. In this case, your honors, the tax court erred in concluding that it lacked jurisdiction or the taxpayers petitioned to review the IRS collection activity, that is the IRS notice of intent to levy. I think there are a couple facts that I want to highlight really that are not in dispute, that really focus what this case is about. I pulled these following facts. They can be found in the government's brief on pages 3 through 6. One, the appellant was convicted of tax crimes. Two, this tax criminal conviction in the Eastern District of New York resulted in a criminal judgment for taxes, a restitution-based assessment in the amount of about $390,000. Three, the restitution-based assessment formed the grounds for the IRS collection activity, that is the IRS notice of intent to levy. Four, the appellant was in the custody of the Federal Bureau of Prisons, the BOP, for his criminal tax conviction. Five, the IRS knew that the appellant was in the custody of the BOP. Six, in September 2014, the IRS revenue officer, Mr. Crimmins, was informed by another IRS employee, Joanne Daniels, that the appellant was in custody at the BOP facility in Miami. Seven, that instead of going to the BOP facility in Miami, the revenue officer went to the appellant's address on the tax returns and was informed yet again that the appellant was incarcerated. Let me ask you a question because you're raising a constitutional argument that regardless of what the IRS's regulations say, in a situation where the IRS knows or has information that a taxpayer is incarcerated, they have to provide notice to the prison facility, right? That's one of your arguments and it's your constitutional argument. Well, I want to put this in context. I'm talking about the collection due process provisions of the Internal Revenue Code. I bring a due process claim. It is not implicit in the CDP provisions of the Internal Revenue Code. It's explicit. The CDP provisions of the Internal Revenue Code explicitly reference due process. So the whole point about providing notice to a taxpayer of IRS collection activity, it's all in the soup, so to speak. Judge Jordan, this is what we're talking about and this is why the IRS- I know, but it just says the last known address. That's what the provision requires, right? That's what the regulation requires. The regulation requires the last known address and then the 6330-1. But it says, but again, that regulation, which is 301.6330-1A1, it says the notice of intent to levy must be given in person, left at the dwelling or usual place of business of the taxpayer, that's two, and three, or sent by certified or registered mail, return receipt requested to the taxpayer's last known address. Which then provides a cross-reference to the regulation 162-12. I know, but your position is that constitutional due process requires that the notice be sent to a prison facility if the government knows that a taxpayer is incarcerated. Yes. Right, that's your argument. Yes, and in addition, that even under the regulation, that the IRS knew that my client's last known address, because they had clear and concise, clear, concise knowledge of where he was actually located. I have two questions about this particular argument. First of all, was it raised in the tax court? Yes, I believe it was, Judge. I believe that this issue was properly raised and preserved, that the government's brief actually acknowledges that at page 13, that the taxpayer argued that he put the IRS on notice that he was incarcerated at the BOP facility. I'm not talking about that. I'm talking about the fact that it was a violation of due process, that by not notifying him at the prison, he violated due process. Was that argument made? The constitutional due process argument. No, my client's trial attorney didn't couch it in terms of constitutional due process under the Fifth Amendment. Okay, that's my first point. The second one I have is whether this particular notice is required under due process, even if it was preserved, because prior to, in recent years anyway, this provision was amended to add this notice. So presumably, these levies occurred without any hearing prior to the enactment of this provision. And presumably, it did not violate due process then. And so my question is whether this notice, the absence of this notice, really is a due process problem, or whether it's just a statutory problem. Well, Your Honor, I would submit that, one, before the 1998 IRS Restructuring Act, the IRS levies, which are a form of governmental self-help, I would submit should have been, I don't know if it was ever contested, subject to the due process provisions, but the Duesenberry case from the Supreme Court was a 2002. The issue is really whether the amount of the levy has been determined, right? That's already been determined, the amount of the deficiency. By virtue of the criminal judgment in the Eastern District Court. So the hearing is really a question of how the IRS is to collect it. What they can go after. Is that right? For the most part, however, there is a bit of a twist. There is recent tax court case law, it's Klein v. Commissioner, it's a 2017 case, and that tax court case has held that interest on a restitution-based assessment is not allowable under the Internal Revenue Code. And the government's position, at least in the notice intent to levy issued to my client, was in addition to the $390,000 of restitution-based assessment, that there was interest thereon, which is why the number blew into well over 700,000. So my client would be able, if given the... They could have, you're saying your client could have contested that at this hearing? The CDP hearing, yes. He wouldn't be able to contest the $390,000, the actual restitution-based, but the application of law, the interest on the $390,000, he would be able to contest that amount in the CDP hearing. And was that not available to him on the equivalency hearing that he did have, that they gave him, from which he couldn't appeal? Well, at the time, I would say that that would have been a legal and factual impossibility, because this case that I'm talking about, the Klein case, just recently issued. So it wouldn't have been something that any diligent taxpayer or tax attorney would have known to have raised at that time. But I would like to bring this course, bring it back a couple years. I know you all sit on the district court. I would think that when a district judge, in a criminal tax case, sends a criminal defendant for a criminal tax violation and remands him to the custody of the Federal Bureau of Prisons on a tax charge, nonetheless, that at that point, the government writ large, and the IRS in particular, is on clear and concise notice that a taxpayer criminal defendant is in the custody of the BOP. And that notice... I have another question. What is the last known address? I would submit the last known address is my client's address at the Miami Boot Camp that's about 45 minutes down the road. It's located next to the Miami Zoo. Did you raise that argument? Is it in your briefs as such? And did you raise it? I had thought that throughout, you were taking the position, and there's statements I believe that you've made in the brief, that the last known address was the tax, was what was on his tax return. No. No. That's the government's position. No, no. But you haven't made a specific argument that there was clear notice of his last known address at the prison, and therefore, they didn't comply with the statute. I don't think you've made that argument. I think to the contrary, Judge. I think it's... I thought your argument was the due process claim, primarily the due process claim, and then whether receipt of the notice is sufficient to trigger the 30-day period. Well, the due process claim is that the notice has to go to the federal institution where my client is located, which... But that's a separate question. No, but it ties into, because that has to be my client's last known address. No. Under the statute, I'm talking about a pure... If the due process doesn't work, for the reasons I've suggested, either because it's waived or whatever, you don't have... You haven't made an argument, leaving due process out of it, that the last known address was the prison. I was surprised, because I think it's a winner. I don't... But Judge, I... It might be a winner. One, I think it was raised below. It's definitely in... I look at your brief and I don't see it, and therefore, I wonder whether your adversary had the opportunity to respond to it. Well... If that's the case, then I think that's a serious... It's a problem. Well, on rebuttal, I'll point to the points of the brief, which I think that it is made. But putting that point aside, going back to the... What I think really happened here is that the revenue officer, he just didn't want to go to the BOP facility. I understand being a member of a CJA panel, going to an MDC, going to a federal correction, it's a pain in the butt. No one likes doing it. But notwithstanding, based upon what the revenue officer knew, not only based upon the criminal conviction, based upon what Joanna Daniels told him, based upon what the neighbor told him, based upon what my client's criminal defense attorney told him, the IRS objectively and the revenue officer subjectively knew he was at the Miami boot camp. Didn't he also know that, according to what he was told, that he was going to get out of prison sometime in early November? And that's when the letter was sent? He was supposed to get out November 20th. The letter was sent November 3rd. Correct. So, if he sends the letter to the prison, your client may not get it. I don't... Well, because he had to go to a halfway house. It's not like he was just released back in the general population. So he goes to a halfway house, which is controlled or affiliated with the BOP as well. I see I've run over my time. Does the fact that he filed the joint tax return for tax year 2013 with the Equus Circle address matter at all in your constitutional argument? No. And one thing I wanted to highlight to that, this court, you have to think back to what was going on back around 2013, 2014. With all the stolen identity refund cases that I know this court has seen, there was a real problem with using your address at a BOP facility because the BOP and the IRS was rightfully concerned that people are getting social security numbers ripped off and people were improperly getting tax returns sent to a BOP facility that they weren't entitled to. So, in this context, it was perfectly reasonable for my client, and I believe he actually couldn't use his BOP address for his tax return itself. So I see I've run over my time. Is that on the record? Unfortunately not. Unfortunately, I wish that is. I understand that the court is not willing or unable to take judicial notice of it, but that's the world that we lived in a couple years ago. Thank you. Good morning. May it please the court. My name is Janet Bradley, and I'm with the Justice Department, and I represent the appellee, the commissioner in this appeal. I want to start off with the observations of Judge Walker. It's the government's position that the appellant did not raise the argument that the Bureau of Prison Address was his last known address. Here the statute 6330A2C allows the IRS, per the statute, to send the collection due process pre-levy notice to the person's last known address by registered or certified mail. Here there's no dispute that in this specific situation that the commissioner sent it properly to the taxpayer's last known address, and the last known address is presumably the address used on the taxpayer's last return. Leaving aside the fact that it wasn't raised, can you really, with a straight face, say that his house was his last known address? Where there's all this evidence that the IRS officer knew that he was in prison. He'd been told on, I think, three separate occasions in September that he was in prison. He was in prison for the very tax crime that was at issue in this case, and he'd been told that no one at Boynton Beach, there was nobody there, and then when he did ultimately talk to the girlfriend, she said he was no longer there, and the criminal defense lawyer said he was in prison. All this happened in September, and the notice didn't go out until November. Let me address that, number one here. The address was the Equus address where the girlfriend, Ms. Thomas, was living, and the taxpayer here provided to the IRS a tax authorization form which permitted Ms. Thomas to receive his tax information at that address. While the revenue officers may have known, obviously he had this criminal, he pled guilty here to a variety of criminal charges, and while Ms. Thomas may have said that he wasn't living there, at no point did she say that she wasn't in communication with the taxpayer here, so there's nothing here in the record, and again, here the conversations, and I agree it was probably about three times Mr. Hoffman spoke to the IRS, and again, the IRS kept saying to Mr. Hoffman that it could not discuss his tax matters with Mr. Hoffman because he had no power of attorney, so I think some of that was just very informal, off-the-cuff kind of remarks, and again, here the taxpayer himself... As a real-world matter, there's no question the criminals knew that he was in jail. We knew he was in jail. You're not arguing that he didn't know. We knew he was sentenced to... In September 15th, he learned that he was incarcerated. He called the prison, in fact. No one answered. He did not call the prison after that, and then on September 22nd, he went to the Equus address. No one was home, but he spoke to a neighbor who said the prisoner was in jail, and then on September 24th, he spoke to Hoffman, who said the same thing, and that... Apparently, Mrs. Thomas had called Hoffman on that occasion, and Crimmins said he couldn't speak to Hoffman, but Hoffman told Crimmins that the petitioner was in prison and was going to be released to a halfway house in November. All of these things happened. Neighbors, he was told independently. Hoffman told him. There was no question about that, and my question is, why wouldn't he send an extra copy to the prison of the notice, even though maybe it wasn't quite by the board? The statute doesn't require us to send it to a variety of addresses. Here, again, the taxpayer who was an attorney could have designated, as ultimately with Mr. Levy as his power of attorney, could have designated earlier Mr. Levy or Hoffman as his power of attorney, and in those situations, we would have sent a copy. Well, even if in fact the prison was his last known address, then one has an uneasy feeling about this case because basically he's avoided his appeal on the basis of technicality, on the basis of the fact that he didn't make the proper arguments at the right places. Well, and again, I would take issue with that to the extent, again here, that while the taxpayer was in prison, he could have and should have if he believed that the mailing, any collection mailing, and again here, this is for 2004 taxes, and the conviction or he pled guilty in 2012. So he knew that this was coming. He did not voluntarily make any attempt to pay the amount due, and he could have when he was in prison on either, on his 2013 return, he could have, and that would have been due notice to the commissioner that that was his last known address. Isn't there an allegation, although the IRS denies receipt, isn't there an allegation that sometime in early 2014 and before he filed his 2013 tax return, he sent a letter to the IRS telling him to send all tax correspondence to him in prison? Again, that correspondence with respect to maybe updating his, in an attempt to update his last known address, I believe all of that correspondence, and we made the argument in our brief and below, that all predated his 2013 return. I understand, but it's one thing to say that the statute gives you a presumptive last known address, which is the address listed in the last filed tax return, but the regulation also says that although the last known address is the address that appears on the taxpayer's most recently filed and properly processed federal tax return, unless the IRS has given clear and concise notification of a different address, why isn't a letter from the taxpayer telling the IRS, send my tax notices, mail, et cetera, to me in prison? Why isn't that clear and concise notification of a different address pursuant to the regulation? The tax court, I believe, specifically addressed that argument, and that purported notice was defective and wasn't determined to be clear and concise notice. I thought the point was that the letter was sent in January, and that he filed his return on April 15th, and therefore that was now the last known address. But one could ask whether that letter, which was sent in January, became operative again as soon as the agent knew that he was still in prison. Well, again, that was informal communications from Mr. Hoffman, the girlfriend, and again, at no point, and again, Ms. Thompson had that authorization to receive it. The taxpayer here, Mr. Berkum, could have revoked that authorization. He didn't. And again, on his return, which was his last correspondence official with the IRS, he used the ECWAS address. That notice was received, and we got the return receipt within about, I think it was a week, that it was actually received at that address. If we find that the notice, if we were to conclude that they should have notified him at prison and didn't, and accept your opponent's arguments, what would happen here is basically the tax court would have jurisdiction. That's really what we're talking about, whether the tax court has jurisdiction under the statute. Right. Because here, because Mr. Berkum's request for a hearing was passed 30 days after the November 3rd, here he had due process. There was, in this instance, an equivalent hearing, not a CDP hearing. And at that time, Mr. Berkum did, in fact, raise various arguments as to why there should be alternatives to collection. He raised the matter of the stamp collection and that he needed his Oppenheimer funds to pay for his support. And the IRS considered it. The Office of Appeals considered both of his arguments and decided that neither had any merit insofar as he was actually living with his mother for a variety of years, so didn't need the support. And again, the Oppenheimer account was there, was readily available to go after these purported proceeds from a stamp collection. I mean, that was really fairly attenuated here in this situation. So the Office of Appeals fully considered, and these would have been the arguments, I'm assuming, that the taxpayer would have raised if he had filed a timely request for a hearing for a CDP. There really was no difference in the context of what arguments he could have pressed. Here he made all those arguments. And I'll go back to Judge Walker's point. In the taxpayer's opening brief, as we point out in our brief, they go silent on the last known address and make the argument, the due process argument. And again, here, in the context of the statute and the regulations, the taxpayer had due process. He raised the arguments. They were fully considered. And the fact of the matter is... What about the point that your adversary makes that even before the 1999 changes, in response to my question, that because there was no requirement of a hearing before 1999, why should there be due process? Why does a notice now require it under due process? And he says, well, because you can get more money at this hearing based on interest. Well, again, that's a new argument to me. It wasn't made in the appellant's opening brief. And I checked. They didn't file a reply brief. So the Klein case that was cited this morning by counsel, I'm not familiar with it. I haven't reviewed it. I'm at a loss to address what happened here. He said it was just recently decided. Well, I guess he could have submitted a 28-J letter to the court and to counsel, and I would have been happy to review it. But again, here, in the context of a restitution-based assessment, he wasn't allowed to contest that he owed it or the amount. Whatever this interest issue is, I don't know. Again, he hasn't made the argument. It was really a question of just how the IRS could go about... what they could do to get it. That was really what it was. In other words, the amount owed was not in controversy. It was just a question of the method of collection. Well, we proposed a levy to collect it. So that was what the IRS... We didn't file a lien here. And you can make arguments to the effect that, you know, the way you proposed to collect it is it would be harmful in certain ways, and you should collect it some other way. Well, and again, here, Mr. Burkham did raise those concerns. He had a full and fair opportunity in the context of an equivalent hearing, which an equivalent hearing is essentially the same thing as the CDP, the same procedures. Here, he raised those concerns, and the IRS, the Office of Appeals, considered the arguments that he made about the stamp collection and the alternative about needing his IRA Oppenheimer accounts to pay for his support. We considered it, and we determined that he was living with his mother for a number of years, so he didn't need that amount to live someplace or to pay for food. And again, the stamp collection, these were based on his allegations of his stamp collection, what the value of it in some account. And again, it was his girlfriend with which he had, I believe, three or four children, and he was living in the home with her. We considered that, the Office of Appeals, and just decided that they weren't valid. And even if this were a CDP, and even if it was a Notice of Determination, there was no abuse of discretion, which would be the standard to determine whether or not the IRS Office of Appeals considered collection alternatives and rejected it. So the government's view in some is essentially that the notice was sent pursuant of the statute. It was, in fact, delivered. We got a return receipt at that address. His girlfriend, with whom he had three children, were living, had a valid tax information authorization form. There was nothing in the record that she wasn't communicating with Mr. Berkham, visiting him at prison or whatever. And again, Mr. Berkham had the opportunity, knowing how long he was going to be in prison, to actually put that address on his return. That would have given the commissioner notice of where he was at the time. And again, when he was getting out, not getting out, these, again, were very informal communications. There was no power of attorney. And we sent it where we should have. He had the equivalent hearing. And just to address, I know the court hasn't addressed it, but as this court in Peterson and Romano also addressed CDP cases here, the regulations interpreting the alternative to a CDP hearing as an equivalent hearing are reasonable. He had due process. And at this point, we would just ask that this court affirm the dismissal by the tax court for lack of jurisdiction and their denial of his motion to vacate. I just want to ask you about something you said before you sit down. So I'm looking at Stephen Kremen's affidavit. He says in here that the taxpayer told him he wanted to revoke the authorization to Ms. Thomas. Am I misunderstanding that? That may be the allegation there. No, this is the affidavit by your agent. No, I understand, but to revoke the form, I believe there's a form that must be completed to do so. So I don't know if that ... I thought your argument was there was no indication to us that he didn't want to rely on this relationship with Ms. Thomas. And so the question that comes to my mind in response to that is, well, what about when he told your agent that he wanted to revoke this form that relied on her? I don't have that in front of me. Does that have a specific date as to when? This is ... yeah. He says at the ... let me see. He says he met with him in January 21, 2015. That post dated the date of the notice. The CD ... I mean, the pre-levy notice went out on November 3rd, so the January subsequent informal meeting at his mother's house was after the notice was properly sent. Yeah, but I mean, you don't want to ... so you don't want to rethink your argument that he never indicated to us that there was any problem with us relying on Ms. Thomas? Not prior to the time that the notice, the pre-levy notice was sent. Okay. Thank you. Thank you. Your Honors, regarding Mr. Hoffman, my client's criminal defense attorney, and whether his indication to the revenue officer, the legal significance of it. Your Honors, I submit because Mr. Hoffman was my client's criminal defense attorney in the very case that gave rise to the criminal-based tax judgment and was the genesis of the restitution-based assessment, Mr. Hoffman, I would think, being the attorney of record in a case against the GAT, the tax assessment, would have had the authority to inform and represent my client before the IRS. Granted, he did not have the IRS Form 2848, but I think under the circumstances, the fact that he didn't have the official form on file, well, it could have been done better, yes, but I think at the root of the day, the IRS knew where my client was. So putting aside that certain niceties weren't filed by the lack of the power of attorney form 2848, Mr. Crimmins knew at the time that he issued the November 3rd notice of intent to levy where my client was, and Judge Martin, you're right, the letter that was issued on It's pretty clear to me that the IRS was, again, put on notice not only referencing my client's criminal tax case in the Eastern District of New York and letting him know of his BOP inmate number, where he was residing, at the Miami Boot Camp, the federal penitentiary not too far from here. And that letter that's at record six page 10 was in response to a letter sent by the IRS employee, Ms. Jennings, to my client. So I think when you look at the total facts of this case, the IRS knew where my client was. They didn't provide him notice. All we're talking about here is a remand back to the district court to consider de novo my client's collection alternatives. My client doesn't get the proverbial get out of jail card free. All he gets is a hearing before the tax court to determine whether the IRS collection procedures were reasonable under the circumstances and to raise this very new case that I granted. I did not file a 28-J letter and inform opposing counsel. But for what it's worth, the case is Klein v. Commissioner, the 2017 case out of the tax court, 149 TC number 15, 1-5. That case answers the simple proposition that interest does not accrue on a restitution-based assessment. And for my client, that means a lot. The restitution-based assessment, which he does not contest, is about $390,000. But sitting here today, with interest, that number has ballooned to well over $700,000. So this is real money to my client. And I submit that under the circumstances, given the facts, that this court should remand the case and vacate the order dismissing for one jurisdiction and allow my client's case be considered on the merits. Seeing no further questions, I thank you for your time. Thank you so much. That concludes our cases for this morning. Court will reconvene tomorrow morning at 9 o'clock.